## TOMASSI v. CHRISTENSEN et al.

(Supreme Court, Appellate Division, Third Department.    January 5, 1916.)

1. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—INJURIES TO
   SERVANT—WORKMEN'S COMPENSATION LAW—"LONGSHORE WORK."
       A ragpicker who picked rags upon a dump at the foot of a street, from
   whence the garbage and other refuse was carried out to sea in scows, is
   not engaged in "longshore work" within the Workmen's Compensation
   Law (Consol. Laws, c. 67) § 2, group 10, declaring that longshore work,
   including the loading or unloading of cargoes, or the moving or handling
   of other products on any dock, etc., is an extrahazardous occupation, for
   the ragpicker was not engaged in loading or unloading the scows, but
   merely combing refuse for articles of value.

2. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—INJURIES TO
   SERVANT—WORKMEN'S COMPENSATION LAW—INJURIES.
       In such case the ragpicker does not fall within group 28, including the
   manufacture of drugs, chemicals, fertilizers, and garbage disposal plant,
   it not appearing that the contractor for whom the picker was working
   was engaged in the manufacture of drugs or fertilizers, but merely that
   he was combing refuse for articles of value.

Appeal from Workmen's Compensation Commission.

Proceedings by Guiseppi Tomassi against Harold B. Christensen, Jr.,
employer, and the Casualty Company of America, insurer, for com-
pensation under the Workmen's Compensation Law. From an award
by the State Industrial Commission, the employer and insurer appeal.
Reversed and remitted to the Commission.

Argued before KELLOGG, P. J., and LYON, HOWARD, and
WOODWARD, JJ.

Lyman A. Spalding, of New York City (Theodore H. Lord, of New
York City, of counsel), for appellants.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen.,
of counsel), for respondent.

JOHN M. KELLOGG, P. J.   [1] The Commission has found, in
substance, that a ragpicker, searching for rags among the rubbish de-
livered by wagons at a city dump at the foot of a street, is engaged
in longshore work.  While picking rags upon a dump at the foot of
West Eightieth street, New York, the claimant cut his thumb upon
a piece of glass.  Later infection set in, and the disability for which
the award was made resulted.  Group 10 in section 2 of the Work-
men's Compensation Law is as follows:

"Longshore work, including the loading or unloading of cargoes or parts of
cargoes of grain, coal, ore, freight, general merchandise, lumber or other prod-
ucts or materials, or moving or handling the same on any dock, platform or
place, or in any warehouse or other place of storage." ,

The subdivision of the section quoted carries with it the legislative
understanding as to what "longshore work" means.  Such employment
not only refers to the loading and unloading of cargoes, but to the
moving or handling of any part of a cargo upon any dock, platform,
or place, or in any warehouse or other place of storage.  The word

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"cargo" ordinarily means the lading or freight of a ship or other vessel; the goods, merchandise, or whatever is conveyed in a vessel or boat. The claim, therefore, is not within this group unless claimant was loading or unloading, moving or handling, a part of a cargo. The fact that the city dump was at the foot of a street, and that the plaintiff was working upon it, does not make his work longshore work any more than if the dump had been at a distance from the shore. The Commission had the right to assume that scows would come alongside of the dump from time to time and remove the refuse, but the claimant had nothing to do with the removal. The refuse forming the dump was brought to the place by wagons, and from time to time the claimant and others would go over the dump in search of rags or any other things of value. This was not to prepare the refuse upon the dump for shipment, but was in the interest of the contractor, who had the right to go over the dump and take from it anything he wished. The refuse would be removed whether the contractor exercised his right or not; but to get the value of his contract, he would be interested in having his·employés take from it before removal whatever was of value. There is nothing to indicate that the plaintiff ever went upon the scows; but, if he searched for rags upon the scows, he was not there for the purpose of loading or unloading or handling the cargo, but solely for the purpose of taking from the scow whatever he might find there of value, not in the interest of the shipping of the cargo, but in the interest of the contractor in obtaining what profit he could from the refuse. But there is nothing to indicate that the claimant worked upon the scows. The evidence shows that his work was upon the dump as wagons were throwing the refuse upon it.

The presumption raised by section 21 of the act that the case comes within the act does not permit the words of the statute to be warped from their usual and ordinary meaning. It relates more to the facts; so far as it affects the construction of the statute itself, it can only be material as indicating that the statute is a remedial one, and should be given a liberal construction in order to carry out the beneficial purposes intended to be accomplished by the law. It is the duty of the Legislature, and not of the Commission or of this court, to determine what employments are hazardous. With reference to the act an employment is either hazardous or nonhazardous, and no employment can be treated as hazardous unless the act, fairly construed, declares it such. We cannot give to the language employed a strained or unusual meaning for the purpose of bringing within the act an employment not intended by the Legislature to be embraced within it. The handling and moving of cargoes is hazardous on account of the conditions under which they are moved and handled in loading and unloading boats and the nature and quality of the merchandise usually making such cargoes. The hazard arises from the heavy nature of the work. Picking rags from a dump at the foot of a street was·not fairly within the legislative meaning when it declared longshore work to be a hazardous employment. The Commission therefore made an error in law when it declared that the claimant was engaged in longshore work at the time of the accident, and for such error its award must

be reversed within the Gardener Case, 156 N. Y. Supp. 899, decided at this term of court.

[2] Upon the argument the Attorney General suggested that the case might fall within group 28, which is "manufacturer of drugs, and chemicals, * * * medicines * * * fertilizers, including garbage disposal plant; shoe blacking or polish." The Commission has found no fact tending to show that the claimant was employed in the manufacture of fertilizers or upon a garbage disposal plant connected in any way with such manufacture. It would seem to be a straining of this subdivision of the statute to bring the work of the claimant within its provisions. Undoubtedly some of the garbage collected through the city and thrown upon a dump might be used for fertilizers; but the group contemplates a manufacture of fertilizers and a garbage disposal plant in some way connected with such manufacture. A mere dumping of refuse which may contain material valuable as a fertilizer does not make the dump a garbage disposal plant. In the absence of some evidence or some finding to indicate more particularly the character of the dump, it cannot be assumed that the claimant was engaged in that employment. A new hearing may develop further facts; but, upon the theory upon which the case was heard and disposed of by the Commission, we find that the award is not justified, and that the Commission committed error of law in making it. It, therefore, should be reversed, and the matter remitted to the Commission for its action. All concur. SMITH, P. J., not being a member of the court at the time of the decision.